Good morning, Your Honors, Justice Farris, Nelson-Mbay, and Mr. Anderson. I'm reserving one-minute rebuttal time. My name is Georgia McMillan. I represent the petitioner, Peter Halloran, on this federal habeas appeal. Your Honors, sometimes terrible mistakes happen in the criminal justice system. This is one of these rare instances where a terrible mistake has happened, and my client has spent the past 14 years in jail for a crime he did not commit, one count of attempted sexual assault in the first degree. This case begins with an altercation that happened way back in July 1996. Counsel, before you begin, could I just clarify something? Is Mr. Halloran's habeas petition raising a substantive claim of actual innocence or a procedural due process claim? He's raising a substantive claim of actual innocence. All right. Thank you. This case began with an altercation in front of an apartment building here in Honolulu in 1996. As a result of this altercation, a charge of one count, attempted sexual assault, first degree, was made against my client. It went to a jury trial. A jury convicted my client. The jury convicted my client March 1997. Approximately one month later, purely by happenstance, my client met in jail an eyewitness to this event named Domingo Ruiz. Unfortunately, the time period to file a new trial under Rule 33 of the Hawaii Rules of Penal Procedure had passed. It was a 10-day rule, and that 10-day time limit is jurisdictional. Notwithstanding, my client proceeded on with new counsel. Now, he filed a motion for a Rule 33 hearing. That hearing took place September 1997. At that time, the court took the testimony of this newly discovered eyewitness, Mr. Ruiz. Notwithstanding, the court denied the motion because there was a jurisdictional bar given the lapse of time, from the time that he was convicted by the jury to when he filed his motion for a new trial. My client appealed, and then he proceeded with his post-conviction collateral claims in the Hawaii state court system. He lost every time he turned around. So he filed his petition for a federal habeas claim in U.S. District Court here in Hawaii in 2004. As a result of that claim, U.S. District Court denied his petition, also denied the Certificate of Appealability. Finally, Your Honors, granted the Certificate of Appealability. Your Honors, we think that the District Court got the petition all wrong. In the petition, Mr. Halloran had to show that he has both cause and prejudice as a result of failing to file the new trial motion in a timely manner. We think he has. So did the District Court. The District Court considered the cause-prejudice standard through the lens of the five-element test for seeking a new trial. The elements are newly discovered evidence that the petitioner did not sit on his rights, that the evidence is material, that it is not cumulative or merely impeaching, and that if heard by a jury, it would result in a new trial. Our District Court found that he showed in his papers the first three elements, that it was newly discovered, this eyewitness, Domingo Ruiz, that the petitioner did not know of this eyewitness at the time. The eyewitness fled the scene before the police came. Well, he didn't flee the scene. He left because he didn't think he was needed. Isn't that what the record says? He left because he didn't think he was needed, and that's an important point, Judge. When you said fled, maybe I misunderstood what you meant. I misspoke. He left the scene because he didn't think he was needed. It's not pivotal. I just wondered if... But it is an important point, that he did not think he was needed. So now, in the U.S. District Court, the court found that the testimony of Domingo Ruiz would be cumulative to another eyewitness at the scene, Orlando Wilson, and also the District Court found that a jury hearing the new eyewitness would not bring a judgment of acquittal. We think that the District Court has abused its discretion on both counts. Let me ask a question here. Is it true that Mr. Ruiz arrived after Mr. Wilson and saw only the last 60 to 90 seconds of the assault before the police arrived? That's what the... Well, if this is true, isn't his testimony fairly compatible with Wilson's testimony? Can you point to me something in the record that might change my mind? Yes. The District Court found that you had one eyewitness, Orlando Wilson, who testified at the trial, and he said that, as Your Honor points out, Domingo Ruiz's testimony would be merely cumulative because he arrived after Wilson did, and he only saw about the last minute of this altercation. We find that the District Court's reliance on the testimony of Orlando Wilson to be irrational and an error. Orlando Wilson's testimony doesn't make sense from the beginning, Your Honor. Orlando Wilson said that he saw this altercation from a next-door apartment building and his second-floor apartment. He testified to this at trial. On cross-examination, he twice admitted, I lied. I actually didn't see that altercation. He then testified to some highly dubious physical feats. He said that after he saw this altercation, then he said he didn't see it in front of the jury. He said he went back into his apartment. He dressed in two seconds, and then he jumped over his second-floor apartment railing and ran to the scene of the incident. We find the District Court's reliance on this testimony to be erroneous and completely irrational. It doesn't make sense that this person could do all of these intervening steps, dress in two seconds, 1-1000, 2-1000, and he's dressed, and then jump over the railing from a second-story uninjured and go and inspect the scene of this incident. Moreover, Your Honor, we find other terrible credibility problems with Wilson's testimony and are befuddled that the District Court had any kind of reliance on it. Orlando Wilson testified that when he got to the scene of this incident, he saw that the petitioner was laying on this alleged victim. However, in his police statement, he said that he was sitting-laying on her. He said in this police statement that he saw the petitioner's shorts down around his knees and his penis exposed. However, at trial, he changed his story entirely. He said, oh, no, his shorts were up, and his penis was sticking out of the side of his shorts. In his police statement, he said nothing about the petitioner punching the alleged victim. Yet now, at trial, nine months later, he's got a petitioner punching the victim. He said nothing about petitioners screaming at the alleged victim in his police statement. However, at trial, now he comes up with, oh, the petitioner said, shut the F up to the alleged victim. As well, he said, you know, I signed the police statement, even though it was dark and I really couldn't read parts of it. And then at the trial, he said the police statement is correct. And a few pages later in the transcript, he says the police made everything up on the police statement. We just find the District Court's reliance on this testimony to be completely irrational, and we don't understand how the District Court could then take Domingo Ruiz's testimony that we lay out carefully in the briefs and say that it is cumulative to that testimony. When Domingo Ruiz testified that he was right next door, he was on the first floor, so he didn't have to engage in some sort of amazing physical feat and jump over the side of a railing and down to a parking lot. He immediately went to the scene of the incident. He took no intervening steps, and there he saw a very different situation. He saw my client trying to get away from this alleged victim who was screaming at my client, holding onto his leg, tugging on his shorts, cursing out my client, and most importantly, and this goes to your Honor's point that Domingo Ruiz left when the police came, most importantly, Domingo Ruiz said that this alleged victim evinced no signs of fear. She called for no help. Nothing in the situation made Domingo Ruiz, who was there with a friend, think he needed to intercede on her behalf, and therefore nothing made him think that this was something that he needed to stick around for and talk to the police about, so he left. I'm afraid you've exceeded your time. Thank you very much. Thank you. We'll give you a minute of rebuttal in a moment. May it please the Court. James Anderson for the respondents. It's our position that the prisoner has not even come close to showing that he should be excused from his admitted procedural default. He has neither shown prejudice in the denial of his Rule 33 motion, nor has he shown a fundamental miscarriage of justice. He has hinged for 10 years now, he has hinged his actual innocence claim on the testimony of Ruiz, calling him a first eyewitness. Let me ask this. Isn't it likely that the jury relied heavily on Wilson's testimony, and why shouldn't we assume that adding another third-party witness, Ruiz, one who basically contradicts Wilson in terms of the victim, why can't we assume that that might lead to reasonable doubt on the part of the jury if Ruiz had been allowed to testify? Yes, well, the main point is because Ruiz's testimony wasn't even close to being material. As you pointed out earlier, he came to the scene at the end of the altercation. He didn't see the petitioner on the ground. He didn't see the petitioner slam the woman's head onto the concrete as petitioner himself testified. Ruiz came in after that point, and he saw petitioner trying to get away while the victim was grabbing onto him. He's slapping her arms and saying, get the fuck off me, bitch. This is what Ruiz saw. So it wasn't even close to being material as to whether an attempted sexist call occurred or not. What about the status of the victim not appearing to be screaming for help but appearing to try to hold onto him? Well, I believe that the record reflects that she was screaming at different times during the offense. Before Ruiz arrived? I believe so, because that's what I guess triggered everyone to come, you know, Wilson first and then Ruiz. But at this point, I have nothing more to rest on my brief. If there are any questions from the court, I'd be happy to. You think this is a Delo versus Schlupp case? Yes. And the standard there is that the evidence must convince any reasonable juror that with Ruiz's testimony. That no reasonable juror could find him guilty. Yes. No reasonable juror could find the defendant guilty even with Wilson's testimony. Ruiz's testimony. Yes. Yes. Thank you. Briefly, Your Honors, this issue of materiality is no longer in play. The district court found that Orlando, excuse me, Domingo Ruiz's testimony is material. We believe that a jury, the jury did rely on Orlando Wilson's testimony in convicting my client and that if a jury had an opportunity to hear Domingo Ruiz, that testimony by Mr. Ruiz would cancel out Orlando Wilson's testimony. We also make an argument in our brief as to a fundamental miscarriage of justice. Can I ask you this? Yes. Where was the finding of the district court, which you just alluded, that Ruiz's testimony was material as to the assault and not just as to the aftermath of the assault? Is that in the decisions of the court? It's in one of the court's decisions. Can you give me a citation of that? No, not right now, Your Honor. I can provide it to the court. It's in one of the district court's decisions. Is that what you're saying? Yes, that the court found, the court said that the first three elements of the new trial, of the five-element test for a new trial are established or could be established. And at issue is the issue of whether Ruiz's testimony would be cumulative and whether it could lead to an acquittal. All right. You've exceeded your time. Thank you very much. Thank you, Your Honor. The case of Halloran v. Bennett will be submitted. And the court thanks counsel for their presentations. Thank you very much.
judges: Farris, Nelson D. W., Bea